**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Michael Parlin,** | **Civil Action No. 12-3129 (FLW)** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **Christopher Holmes, et al.,** | |
| **Defendants.** | |

**Wolfson, United States District Judge:**

Petitioner, Michael Parlin ("Parlin" or "Petitioner"), filed the instant petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, in which he claims, *inter alia*, (1) that the eleven-month delay between the filing of charges and bringing of an indictment violated his Sixth Amendment right to a speedy trial; (2) that this delay effectively denied him assistance of counsel for that time; and (3) that the trial court erred by admitting both his and his victim's videotaped statements into evidence. For the reasons set forth below, the Petition is denied.

**I.    BACKGROUND**

The facts underlying Petitioner's convictions are not in dispute. Petitioner was a lifelong friend of DK, mother of LK, age ten. *State v. Parlin*, A-2576-08T3 at 2 (App. Div. 2011), ECF No. 9, Ex. 5[1]. On the night of December 28, 2005, Petitioner was playing video games and watching television with DK's ten-year old daughter, LK, in the family's finished basement. *Id*. DK then went to bed at around 10:00pm, and LK fell asleep on the couch in the basement alongside

---

[1] All exhibits are contained within ECF No. 9, and thus will simply be listed as "Ex."

Petitioner. LK awoke in the middle of the night to find "one of Petitioner's hands down her pants and the other under her shirt touching her breast." *Id*.

Later that same morning, DK awoke and saw that LK's bedroom light was on. LK then "described in detail" what Petitioner had done in the basement. *Id*. DK subsequently ordered Petitioner to leave the house, which he did. The following day, LK complained of pain during urination and DK brought her to the police. During a videotaped conversation with a detective, LK "explained and demonstrated on a doll that [Petitioner] had touched her breast and vaginal area." *Id*. at 3. On December 30, 2005, a detective from the State Police interviewed Petitioner after Petitioner signed a written waiver of his Miranda rights. *Id*.

After the December 30, 2005 interview, Petitioner was given the option of taking a polygraph test "at a later date." Ex. 10 at 5. Petitioner agreed to take a polygraph test, which was administered on January 2, 2006. *Id*. The polygraph "detected deception about sexual conduct." *Id*.; *see also* Ex. 5 at 4. Petitioner was advised of his Miranda rights before the polygraph was administered.  As explained by the Appellate Division on direct appeal,

> Defendant then made the following admission:
>
> I was sitting on the couch next to [the girl], I fell asleep, when I woke up my hand was down the front of her pants . . . My other hand was on her breasts outside of her shirt . . . I woke up, realized what I had done.  I said whoa, and took my hand off of her . . . I'm not proud of what I did.
>
> Another detective entered the room to interrogate defendant further.  He advised defendant of his Miranda rights once again.  Defendant signed a waiver form for a third time and gave a videotaped statement in which he made admissions similar to those quoted above.

2

*State v. Parlin*, No. A2576-08 (Jun. 3, 2011), Slip Op. at p. 4.  On that same date, January 2, 2006, Petitioner was charged with two counts of sexual assault and one count of endangering the welfare of a child. *See* ECF No. 9 at 10.

At the time charges were filed, Petitioner was being held in the Ocean County Correctional Facility on charges unrelated to the instant crime. *Id*.  Eleven months later, on November 28, 2006, Petitioner was indicted on first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(1), second-degree sexual assault of a child under the age of thirteen, N.J.S.A. 2C:14-2b, and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a. Through counsel, Petitioner filed a number of pre-trial motions, including a motion to suppress his statements to police, a motion to suppress LK's videotaped statements, and a motion to dismiss based on a violation of Petitioner's speedy trial rights. Ex. 5 at 4-5. After testimony was taken on both motions, and oral argument held, the motions were denied by the trial court. *See generally* Ex. 10.

A jury trial was conducted over six days in April, 2008, and both videotaped statements (Petitioner's and LK's) were admitted into evidence. *See* Exs. 12, 13. The jury found Petitioner not guilty of first-degree aggravated sexual assault, which required a finding of penetration, but guilty of both second-degree sexual assault and third-degree endangering the welfare of a child. At the sentencing hearing on September 4, 2008, the court merged Petitioner's two convictions and sentenced Petitioner to ten years in prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.[2] Petitioner appealed to the Appellate Division, which affirmed both the convictions and the

---

[2] N.J.S.A. 2C:43-7.2 mandates that a prisoner must serve at least 85% of a given sentence before becoming eligible for parole.

sentence. Petitioner then filed a petition for a writ of a habeas corpus with this Court on May 18, 2012. He did not file a petition for post-conviction review in the state courts.

## II.     STANDARD OF REVIEW

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson,* 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett,* 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Section 2254(d)(1) therefore applies to questions of mixed law and fact.

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. *See id.* Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008); *see also* 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. *See Lewis v. Horn*, 581 F.3d 92, 109 (3d Cir. 2009). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *See Eley*, *supra*, at 846 (internal quotations omitted).

**III.    DISCUSSION**

Petitioner raises five grounds for habeas relief in the instant Petition. The first three grounds are all speedy trial-related claims. In Ground One, Petitioner contends that the state "denied [him] reasonable notice of the charges against him," arguing that he was not "served notice" of the complaint filed against him until 316 days after the complaint had been filed. ECF No. 1 at 6. Petitioner contends, in Ground Two, that he was denied access to counsel during this 316-day period, and additional days, in violation of his right to counsel. ECF No. 1 at 7. And, in Ground Three, Petitioner raises contends that his trial did not take place until nearly a year after he was assigned counsel in violation of the Speedy Trial Act. ECF No. 1 at 9. The last two grounds raise evidentiary challenges. In Ground Four, Petitioner contends that the trial court erred in "allowing the jury unfettered access to view the video-taped testimony and access to the transcripts during deliberation placing prejudicial emphasis on that testimony." ECF No. 1 at 10. Lastly, in Ground Five, Petitioner contends that the trial court erred in "replaying the witness['s] direct testimony" without also replaying "cross testimony and other testrimony [sic] negating what the jury was seeking." ECF No. 1 at 12.

### A.     Evidentiary Claims

At the outset, the Court addresses the evidentiary claims because they clearly do not merit habeas relief. In Ground Four of the Petition, as noted, Petitioner contends that the trial judge erred in allowing the jury to have "unfettered access" to view video-taped witness testimony and transcripts during the jury's deliberations. ECF No. 1 at 10. More specifically, Petitioner avers that the trial court allowed the jury to view the videotapes over the objection of Petitioner's defense counsel because the court "was concerned with making it easier for the jury." *Id.* In Petitioner's view, this unfettered access, outside of the confines of the courtroom, prejudiced him in violation of the Due Process Clause of the Fourteenth Amendment. *Id.* at 11. While he does not state so in

6

his Petition, his brief accompanying the Petition suggests that he is challenging the use of the child witness's testimony in particular.³  *See* ECF No. 1-1 at 28-31.

Petitioner argues, in his brief, that allowing the jury unfettered access violates New Jersey state law, including *State v. Burr*, 392 N.J.Super. 538 (App. Div. 2007), *inter alia*.  ECF No. 1-1 at 28-31. He, further, cites case law outside of the Third Circuit in support of his argument, such as *United States v. Binder*, 769 F.2d 595 (9th Cir. 1985) *overruled in part on other grounds by United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997).  *Id.*  He cites no Supreme Court law in support of his position, and neither is *Barr* nor *Binder* rooted in Supreme Court law.  Rather, they are based on state law jurisprudence and circuit law, respectively—two types of law that may not form the basis for habeas relief.  To secure habeas relief, a Petitioner must demonstrate that a state court ruling is contrary to or an unreasonable application of *Supreme Court* precedent.  *Bond v. Beard*, 539 F.3d 256, 263 (3d Cir. 2008), *as amended* (Oct. 17, 2008) ("AEDPA bars habeas relief unless the state court decision is contrary to or an unreasonable application of clearly established Supreme Court law ….") (citations omitted).  Because Petitioner has not made this threshold showing, Ground Four necessarily fails.

To be sure, in the last reasoned state court decision addressing this evidentiary challenge, the Appellate Division considered the matter only under state, and not federal, law.  *See State v. Parlin*, No. A2576-08 (Jun. 3, 2011), Slip Op. at pp. 28-31 (discussing *State v. Burr*, 195 N.J. 119 (2008)).  The appellate court held that the trial court's decision to allow the jury access to the videotaped testimony and transcripts during its deliberations was not an abuse of that court's discretion, and further concluded that, even if it was, Petitioner was not prejudiced.  *Id.* at 29-30.

---

³ It is possible that Petitioner intended to also challenge his own testimony.  To the extent this is the case, the Court's analysis applies with equal force to his testimony.

7

When the jury actually requested to see the transcript of the child witness's testimony, the transcript was unavailable and the jury was required to come into the courtroom to view the videotaped version of the testimony instead. *Id.* at 30. Noticeably, Petitioner has not challenged the factual finding (that the jury was required to view the videotaped testimony in court) by pointing to clear and convincing evidence in the record, and "[a] state court's factual determinations [are] presumed to be correct, rebuttable [only] upon a showing of clear and convincing evidence." *Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009), *as corrected* (July 15, 2009); *see also Bond*, 539 F.3d at 263 (petitioner bears the burden of rebutting presumption of correctness).

Ground Five fails for similar reasons. In Ground Five, Petitioner contends that the trial court erred in replaying the child witness's testimony in full when the jury may have been satisfied with only a partial replay of specific excerpts. *See* ECF No. 1-1 at 34. Again, Petitioner cites to *Burr* and other state court rulings in his papers, and does not point to any Supreme Court precedent in support of his position. The Appellate Division, in its analysis of this ground, discussed state law and, applying a plain error standard because the issue was not raised below before the trial court, held that Petitioner was not prejudiced by the trial court's ruling because the video was replayed in open court. *State v. Parlin*, *supra*, Slip Op. at p. 30, n.2. As with Ground Four, Petitioner has not challenged this factual finding, and it is entitled to deference. Accordingly, Ground Five does not warrant federal habeas relief.

    **B.**    **Speedy Trial Related Claims**

Turning to the speedy-trial related claims, the Court first addresses Ground Three—Petitioner's core claim that he was denied the right to a speedy trial.

    **1.**    **Ground Three – Speedy Trial**

In his Petition, Petitioner contends that he was "powerless to assert his right" because he was imprisoned and was not assigned counsel until his first court appearance in November of 2006. ECF No. 1 at 9. He further contends that he properly asserted his right because, once he was assigned counsel, his counsel raised the speedy trial issue in an omnibus motion on May 7, 2007, and the trial did not take place until April 16, 2008, which was nearly a year following the motion. *Id.* In his brief accompanying the Petition and in his Traverse, Petitioner identifies the governing Supreme Court precedent for speedy trial claims: *Barker v. Wingo*, 407 U.S. 514 (1972).

In *Barker*, the Supreme Court developed a balancing test comprised of four factors that courts are to consider in assessing speedy trial claims: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530. Regarding the first factor, the Supreme Court explained "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Id.* at 530-31. The second factor—the reason for the delay—involves a determination as to which party bears responsibility for the delay. For example,

> [a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* at 531. For the third factor, the "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right," and a defendant's failure to assert his right "makes it difficult" for him to prove that he was denied it. *Id.* at 531-32. Lastly, the fourth factor of prejudice is "assessed in the light of the interests of

defendants which the speedy trial right was designed to protect." *Id.* at 532. More specifically, the three interests courts must consider when determining if the defendant was prejudiced are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* To prevail on a speedy trial claim, all four factors need not be demonstrated; rather, these are guiding factors for courts to consider in a totality-of-the-circumstances fashion, along with other factors courts deem relevant. *Id.*

Here, the Appellate Division did not set forth any reasoning in denying Petitioner's speedy trial claim on the merits. It noted that the claim was without sufficient merit to warrant discussion. *State v. Parlin*, No. A2576-08 (Jun. 3, 2011), Slip Op. at pp. 8, 33. Therefore, the Court will look to the trial court's oral discussion of this issue, in connection with the omnibus motion, as the last reasoned state court decision on the merits.

To provide context for its ruling, the trial court first detailed the pertinent procedural history. The court explained that Petitioner was charged with the crimes that led to the instant conviction in January of 2006, a time at which he was already being held at Ocean County Correctional Facility on unrelated charges. Ex. 11 at 144. Then, the trial court noted, Petitioner remained at the Ocean County facility until November 2, 2006, when he was transported to Hunterdon County Jail. The court recited that Petitioner was indicted by the grand jury on November 28, 2006, and subsequently arraigned on February 15, 2007.[4] *Id.* at 144-45. According to the court's recitation, several status conferences were held after that date. *Id.* at 145.

---

[4] Although the trial transcript reflects February 15, 2006, it is clear from the context of the trial judge's discussion that the transcript should indicate 2007 instead.

In rejecting Petitioner's speedy trial claim, the trial court properly recited the four factors set forth in *Barker v. Wingo*, along with state law cases interpreting *Barker*. *See* Ex. 11 at 153-54. The trial court then gave its reasons on the record for denying the claim:

> [D]efendant has failed to show that there was no legitimate reason for the delay in presenting the charges to the grand jury and has also failed to show how the delay unduly prejudiced defendant. Despite this lack of showing this Court notes that the state attributes the delay to the complexity of the case, the involvement of numerous agencies, the time needed to describe the other three statements involved and then to prepare the case for presentation to a grand jury. Approximately 11 months passed from the time defendant was charged to the time he was indicted for the same offenses. During this time[,] defendant remained incarcerated on unrelated charges and still has two detainers lodge[d] against him. This is the first time defendant is asserting his right to a speedy trial. This Court is satisfied that defendant has not suffered any undue prejudice as a result of a reasonable 11 month delay by the state to present the case to the grand jury. For these reasons[,] defendant's motion . . . is denied.

*Id.* at 154-55.

On federal habeas review, this Court's role is to first assess whether the state court applied the proper Supreme Court precedent in a manner consistent with that precedent. *See Fahy*, 516 F.3d at 189 n.20 (quoting *Shelton v. Carroll*, 464 F.3d 423, 436-37 (2006)). Only when the state court's ruling is contrary to the Supreme Court precedent should the federal court proceed to the second question of whether the state court's ruling was an unreasonable application of Supreme Court law. *Id.* "A state court decision is contrary to Supreme Court precedent . . . if the state court reached a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.*

In this case, the trial court's decision is not contrary to Supreme Court law. The trial judge clearly identified the proper Supreme Court precedent, *Barker v. Wingo,* and applied the four factors set forth by that Supreme Court decision. With respect to the first factor, length of the

delay, he noted that Petitioner experienced an 11 month delay. Moving to the second factor, the reason for the delay, the trial judge agreed with the State of New Jersey that the delay was due to "the complexity of the case, the involvement of numerous agencies, the time needed to describe the other three statements involved and then to prepare the case for presentation to a grand jury." Ex. 11 at 154. By "the three statements," it appears that the court was referring to Petitioner's initial unwillingness to provide truthful testimony about the incident and his subsequent inculpatory testimony. Addressing the third factor, the trial judge noted that Petitioner did not raise the speedy trial issue until he filed his omnibus motion. And, in considering the final factor of prejudice, the trial judge reasoned that an 11-month delay was reasonable, and noted that Petitioner was already being detained on existing charges. *Id*. at 154-55.

By considering each of the factors set forth in *Barker v. Wingo*, the trial court applied the proper legal standard. Moreover, the Supreme Court denied speedy trial habeas relief in *Barker v. Wingo* on much more compelling facts than those presented here. In *Barker*, the defendant had been delayed for five years and the bulk of that delay was directly attributable to the state. 407 U.S. at 534. Yet, the Supreme Court still found that no speedy trial violation had occurred. Because the trial court's ruling considered the relevant *Barker* factors, and did not decide Petitioner's case differently than the Supreme Court has on a set of materially indistinguishable facts, Petitioner has not shown that the state court's ruling is contrary to Supreme Court law.

Both Petitioner and Respondent spend considerable time in their papers arguing the substance of each *Barker* factor; however, as noted, this Court's inquiry is limited to whether the state court's ruling was contrary to existing Supreme Court precedent, or an unreasonable application of that precedent. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) ("[T]he only question that matters under § 2254(d)(1) [is] whether a state court decision is contrary to, or involved an

unreasonable application of, clearly established federal law.")  This Court is not at liberty to conduct its own *de novo* analysis of the factors.  More to the point, it is not enough for this Court, or the parties for that matter, to simply disagree with the state court's ruling.  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  Petitioner has not satisfied this rigorous standard here.

### 2. Ground One – Notice of Criminal Complaint

Petitioner's Ground One is also without merit.  In Ground One, Petitioner contends that, although the initial complaint was filed against him in January of 2006, he was not served with notice of the complaint until over 300 days later in November of 2006.  Petitioner states in the brief accompanying his Petition that the prosecutors claim that warrants were sent to Ocean County facility in January of 2006, and a detainer was lodged against him at that time.  However, Petitioner further notes that the prosecutors blame the Ocean County facility for not making Plaintiff aware of the charges when the facility initially received notice.  ECF No. 1-1 at 6.  Just as with his core speedy trial claim, the Appellate Division noted that this claim was without sufficient merit to warrant discussion in a written opinion.  *State v. Parlin*, No. A2576-08 (Jun. 3, 2011), Slip Op. at pp. 8, 33.

Petitioner cites to various state laws that he argues were violated by the state's failure to serve him sooner than in November of 2006, as well as the out-of-circuit decision of *United States v. Osunde*, 638 F.Supp. 171 (N.D.Cal. 1986).  As noted above, this Court may grant habeas relief only for state court rulings that are contrary to or an unreasonable application of Supreme Court

13

law. And, while Petitioner cites to several Supreme Court cases—*Brown v. Mississippi*, 297 U.S. 278 (1936); *Chambers v. Florida*, 309 U.S. 227 (1940); *McNabb v. United States*, 318 U.S. 332 (1943); *Mallory v. United States*, 354 U.S. 449 (1957); *Chambers v. Mississippi*, 410 U.S. 284 (1973); *Matthews v. Eldridge*, 424 U.S. 319 (1976)—none of those cases address notice. *See Brown*, 297 U.S. at 279 (addressing admissibility of confessions procured by police brutality); *Chambers v. Florida*, 309 U.S. at 227 (same); *McNabb*, 318 U.S. at 613 (excluding confessions taken during delay in arraigning defendant, based on state law rule); *Mallory*, 345 U.S. at 455-56 (same, based on federal rule)[5]; *Chambers v. Mississippi*, 410 U.S. at 285, 294 (addressing admission of repudiated testimony and the right to cross-examine); *Matthews*, 424 U.S. at 901 (post-deprivation hearings required by procedural due process). Therefore, Petitioner's Ground One necessarily fails because he has not demonstrated that the state court denial was contrary to or an unreasonable application of Supreme Court precedent.

### 3.    Ground Two – Denial of Counsel

Finally, Petitioner contends in Ground Two that he was denied access to counsel during the 316-day period during which he was being held at the Ocean County Facility. ECF No. 1 at 7. While Petitioner presents this Ground as a denial of counsel claim, it is, in essence, a rehashing of the notice argument he makes in Ground One. Indeed, Petitioner acknowledges in his Traverse that he "is not claiming ineffective assistance of counsel in the normal sense." ECF No. 12 at 3. Rather, he argues that he was denied counsel at a critical stage in his criminal proceedings. He cites to *Gideon v. Wainwright*, 372 U.S. 335 (1963), and *United States v. Cronic*, 466 U.S. 648 (1984), in support of his position, but does not explain how the state court ruling contravened these

---

[5]    Both *McNabb* and *Mallory* have been superseded by statute as stated in *Corley v. United States*, 556 U.S. 303, 307, 322 (2009).

cases. Petitioner's briefing on this ground does explain what information he believes his counsel could have gathered between January and November 2006, such as information as to why the child victim's mother did not have her undergo a medical examination and why no clothes were collected during the criminal investigation process. ECF No. 1-1 at 14.

As with Petitioner's other speedy-trial related claims, on Petitioner's direct appeal, the Appellate Division did not explicate its reasoning for denying this claim, instead noting that it did not warrant discussion. Neither did the trial court engage in a discussion of this issue during its oral ruling on the omnibus motion below. Therefore, this Court is charged with "determin[ing] what arguments or theories . . . could have supported [ ] the state court's decision; and . . . whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. at 102.

The Supreme Court cases to which Petitioner cites do not support his contention and, more to the point, he has not demonstrated that the state court's ruling is contrary to these decisions. *Gideon* stands for the general proposition that indigent state defendants are entitled to the appointment of counsel. *See* 372 U.S. at 343-45. It does not address at which stage in the criminal prosecution process that counsel must be appointed. *Cronic*, which is a case about counsel competency, notes that a defendant is entitled to counsel during critical stages of his trial, but does not specifically speak to the provision of counsel prior to arraignment, which is the factual scenario present here. 466 U.S. at 658-62. To be sure, there is Supreme Court precedent requiring that counsel be provided at the time of arraignment, *see Hamilton v. Alabama*, 368 U.S. 52 (1961), and Petitioner was afforded counsel at that critical stage in his prosecution. Petitioner has not pointed to, nor has this Court's research revealed any Supreme Court precedent mirroring the factual scenario of this case (where a defendant did not immediately receive notice of a criminal detainer

15

lodged against him and was not appointed counsel during the pre-arraignment phase), and concluding that a defendant was denied the right to counsel.[6] Therefore, Petitioner has not demonstrated that the state court's denial of his Ground Two claim is contrary to or an unreasonable application of Supreme Court law.

Accordingly, for the reasons set forth above, Petitioner is not entitled to relief on Grounds One through Three of the Petition.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to AEDPA, an appeal may not be taken to the Court of Appeals from a district court's order entered in a § 2254 proceeding unless a judge issues a certificate of appealability. Such a certificate is issued where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); s*ee also* 28 U.S.C. § 2255(d); *Gonzalez v. Thayer*, --- U.S. ---, 132 S. Ct. 641, 648 (2012). In this case, the Court denies a certificate of appealability because jurists of reason would not find it debatable that Petitioner has failed to make a substantial showing of the denial of a constitutional right.

## V.  CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is DENIED. An appropriate Order accompanies this Opinion.

---

[6] Moreover, to the extent that Petitioner intimates in his brief that he was not apprised of his right to counsel when he gave his videotaped testimony to the investigating officers, such an intimation is not supported by the record. In ruling on the omnibus motion, the trial judge took testimony on whether Petitioner was properly Mirandized. After hearing from the detectives who interviewed Petitioner in December of 2005 and January of 2006, contrasting their testimony with that of Petitioner, and considering a documented counsel waiver signed by Petitioner, the trial judge concluded that Petitioner had, indeed, signed a counsel waiver and willingly participated in the interview. *See* Ex. 11 at 157-170.

                                                 /s/          Freda L. Wolfson
                                              Hon. Freda Wolfson, U.S.D.J.

Dated: May 29, 2015